Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4085 | **DATE** | 1/9/2003 |
| **CASE TITLE** | Elster vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, this Court grants Elster's motion for summary judgement [9-1] in part and denies it in part. The Commissioner's motion for summary judgement [13-1] is granted in part and denied in part. This case is remanded pursuant to Sentence 4 of 42 U.S.C. Section 405(g) for further proceedings consistent with this decision. The Clerk is directed to enter judgement pursuant to Fed. R. Civ. P. 58 in favor of plaintiff and against defendant. This case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | JAN 13 2003 | 17 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 1/10/2003 | |
| cav | courtroom deputy's initials | date mailed notice | |
| | | cav | |
| | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD ELSTER, )
)
Plaintiff, )
v. ) Case No. 01 C 4085
)
JO ANNE BARNHART, )
Commissioner of Social Security, )
)
Defendant. )

DOCKETED
JAN 1 3 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Elster ("Elster") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for Disabled Adult Child's Insurance Benefits ("DCIB") and Supplemental Security Income ("SSI") under the Social Security Act. Elster seeks summary judgment reversing the Commissioner's decision to deny him benefits, or in the alternative, a remand of the case to the Commissioner for further proceedings. The Commissioner has filed a cross-motion for summary judgment to affirm the ALJ's decision denying Social Security disability benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Court grants in part and denies in part Elster's Motion for Summary Judgment and grants in part and denies in part the Commissioner's Motion for Summary Judgment. This matter is remanded to the Commissioner for further proceedings consistent with this opinion.

## I. BACKGROUND

Elster filed applications for DCIB and SSI benefits in March 1997, alleging that he had been disabled since 1981 due to a learning disability. The Agency denied his applications initially and

upon reconsideration. R. 378-86. Elster requested a hearing before an Administrative Law Judge. R. 70-71. On September 9, 1998, ALJ Irving Stillerman held an administrative hearing at which Elster and his father, Kenneth Elster, appeared and testified. R. 22-58. The ALJ issued a written decision dated December 23, 1998 in which he found that Elster was not disabled. R. 13-21. The Appeals Council denied Elster's request for review of the ALJ's decision. R. 6-9. Elster then filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STATEMENT OF FACTS

At the age of three, Elster was found to have multiple developmental disabilities in his speech, motor, and emotional areas. R. 157. During his primary grades, Elster attended a self-contained learning disability classroom at Riley School. R. 231. In the sixth grade, Elster moved to a special education combined junior high/high school. R. 231.

Elster's intelligence has been tested numerous times. His IQ scores are as follows:

| Date | Verbal IQ | Performance IQ | Full Scale IQ |
| --- | --- | --- | --- |
| 9/86 | 88 | 64 | 74 |
| 9/89 | 95 | 63 | ---- |
| 7/92 | 89 | 58 | ---- |
| 11/96 | 81 | 68 | 74 |

R. 166, 233, 296.

A psychological re-evaluation performed by Maureen Daly, a school psychologist, in September 1989 included the following behavioral observations of Elster:

• Nonverbal items were particularly difficult for Elster;

• Elster did not attend to visual stimuli well and often missed salient clues;

-2-

- Elster's verification skills were weak on spatial reasoning tasks;

- Items involving social judgment were often disjointed and confusing with little organization and evidence of casual relationships;

- Elster's problem-solving attempts on these tasks were weak and he often perseverated, repeating the same errors over and over with little change;

- Elster appeared to be easily distracted and sustained concentration/attention was seemingly difficult for him;

- Directions needed to be concrete, detailed, and provided through multiple sensory channels.

R. 163.

In September 1989, Daly opined that in view of Elster's auditory/visual/spatial processing weakness, weak adaptive behavior skills, particularly in the areas of social perception, inconsistent attention, variable academic skills and academic weaknesses in comprehension in particular, Elster continued to require a highly structured and supportive learning environment that provided him with support and intervention in the above areas. Daly stated that Elster meet the criteria for receiving LD support services. R. 173.

In a July 1992 psychological re-evaluation performed by A. Brogan, a school psychologist, Brogan concluded:

> Richard is a 14-year-old male, who appears to have Low Average to Average intellectual potential, but his performance within the academic setting is limited by specific learning deficits. His academic delays may be the result of unevenly developed cognitive skills, marked by a 31-point difference between visual processing skills and verbal abilities, in favor of the latter. Richard currently has significant developmental deficiencies in the visual perceptual and the visual motor integration areas. His learning difficulties further impact on his peer relationships, as his social comprehension is also impaired. Significant strengths are evident in the verbal realm and, more specifically, in auditory short-term memory skills. Significant emotional issues, resulting form the recent death of Richard's mother, also appear to be significantly impacting on his attention and concentration.

R. 236. An adaptive behavior assessment dated July 22, 1992 indicated that Elster was functioning in the moderately low range in the areas of communication, daily living skills, and socialization. Elster's overall adaptive behavior composite was rated in the moderately low range. R. 240.

On Stanford-Binet testing administered in October 1995, Elster obtained borderline range scores in Verbal and Quantitative Reasoning subtests but performed within the mildly mentally retarded range on visual spatial tasks. R. 272, 274. Elster was found to be functioning overall within the upper end of the MMI [mild mental impairment] range on the Stanford-Binet test. R. 274. School psychologist William Turton, Psy.D., concluded that Elster was "probably best categorized as an MMI [mild mental impairment] student." R. 277. Dr. Turton opined that Elster was a high functioning MMI student with relatively significant spatial processing deficits that were going to further handicap his abilities and probably accounted for much of his slowness in motoric work. R. 274. Dr. Turton stated that Elster continued to need a highly structured, low enrollment, individualized classroom environment where teacher support was available to help with academics and process deficits as well as assist in developing self-confidence and independence. R. 276. Dr. Turton further opined that once Elster graduates, he should be considered eligible for programs for the developmentally disabled, particularly those for an MMI population. R. 277.

Nicholas D. Kokonis, Ph.D., performed psychological testing on Elster on November 4, 1996. R. 295. Kokonis observed that Elster's IQ scores placed him in the borderline range of intellectual ability and he had an overall profile indicative of a learning disability. R. 296. Michael S. Trieger, Psy.D., the State Agency psychologist who reviewed Elster's file at the initial stage of administrative review, opined that Elster's condition fit within the diagnostic criteria for Listing 12.05 of 20 C.F.R. Part 404, Subpart P, Appendix 1. John T. Tamassetti, Ph.D., the psychologist

who apparently reviewed the file at the reconsideration level, opined that Elster's impairments did not fit within those criteria. R. 314. Marcia Martin a Transition Specialist from the Illinois Department of Rehabilitation Services stated in an undated note that Elster's learning disability created a substantial barrier to employment as it seriously limited his functional capacities in the areas of work skills, self-direction, and communication. R. 324.

Elster was 20 years old when the ALJ issued his decision. R. 27. Elster was unmarried and living at home with his father and sister. R. 27. Elster testified that he graduated from a special education high school. R. 28. After graduating, Elster attended job training courses at the high school. R. 28. As part of a job training program, Elster worked at a hospital as a recycling collector and sorter. R. 29-30. He also attended a job training program where he made boxes. R. 31. At the time of the hearing, Elster was working at Jewel as a bagger and cart retriever, with guidance from a job coach. R. 32, 35-36, 44.

## III. DISCUSSION

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order:

1.  Is the claimant presently unemployed?

2.  Is the claimant's impairment severe?

3.  Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?

4. Is the claimant unable to perform her former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. § 416.920(a)-(f). An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. Young v. Secretary of Health and Human Services, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. Id. The claimant bears the burden of proof at steps 1-4. Id. Once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in other work existing in significant numbers in the national economy. Id.

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998).

In his summary judgment motion, Elster first challenges the ALJ's conclusion that he did not meet the criteria Listing 12.05(C). Listing 12.05(c) provides in relevant part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\* \* \*

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function.

20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.05(C) (2002).

Elster argues that he meets or equals Listing 12.05(C) because he has (a) a valid performance IQ of less than 70; and (b) a physical or other mental impairment imposing an additional and significant work-related limitation or function. The Commissioner argues that Elster was required and failed to establish a third factor to meet the listing for mental retardation, namely that he had "significantly subaverage general intellectual functioning."

Before addressing the parties' apparent disagreement over whether a Listing 12.05 has two or three requirements, the Court considers whether substantial evidence supports the ALJ's finding that Elster cannot satisfy the "additional impairment" requirement of Listing 12.05.[1] Elster argues that his asthma and learning disability are impairments which create an "additional and significant work-related limitation." The Commissioner addresses this prong of 12.05(C) only by arguing that if the ALJ erred on this point, it would be harmless because Elster cannot satisfy the requirement that he had "significantly subaverage general intellectual functioning."

The ALJ found that Elster does not have a physical or other mental impairment which imposes additional and significant work-related limitation of function. R. 15. The ALJ stated that Elster's mental/emotional impairments did not meet the requirements or equal the level of severity contemplated under any of the mental categories cited under section 12.00 of the Listing. R. 15. The ALJ further found that Elster's asthma had not resulted in attacks occurring as frequently as required

---

[1] The ALJ correctly found that Elster had obtained a valid performance IQ score of 68. R. 15.

by section 3.03. Tr. 15. The ALJ noted that the record did not reflect an pulmonary function studies with results the equivalent to that required under the tables associated with section 3.02(a). Tr. 16.

Elster takes the position that the physical or other mental impairment prong of 12.05(C) is met when the additional impairment has a more than slight or minimal effect on his ability to perform work. But the newly revised § 12.00 equates "additional and significant" with "severe:"

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e. is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" . . ., we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Substantial deference is afforded an agency's interpretation of its own regulations. Rhodes v. Brown, 153 F.3d 785, 789 (7th Cir. 1998). 20 C.F.R. §§ 416.920 and 404.1520 address the five step sequential analysis applicable to Social Security cases. In step two, the Commissioner determines whether the claimant's impairment or combination of impairments is severe. 20 C.F.R. §§ 416.920(c) and 404.1520(c). An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. Id.

Under the ALJ's own findings, Elster satisfied the "additional impairment" requirement of Listing 12.05(C). The ALJ found that in addition to Elster's borderline range of intelligence, he suffers from a learning disability, a history of moderately low functioning range in adaptive behavior, and a history of asthma. R. 15. The ALJ specifically found that these impairments produce limitations which meet the definition of "severe." R. 15. Under the regulations, a severe impairment meets the second requirement of Listing 12.05(C) of an additional physical or mental impairment

which imposes significant work-related limitation of function. Substantial evidence does not support the ALJ's finding that Elster did not meet the "additional impairment" prong of listing 12.05(C).

The Commissioner maintains that proof of significantly subaverage general intellectual functioning is a separate and additional requirement of Listing 12.05(C). The Commissioner relies on a recent set of revised regulations regarding the evaluation of mental impairments. The Revised Medical Criteria for Evaluating Medical Disorders and Traumatic Brain Injury provides that a claimant must show that he is mentally retarded (i.e., that he had "significantly subaverage general functioning with deficits in adaptive functioning initially manifested during the developmental period") before proceeding to the requirements of Listing 12.05:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets the listing.

65 Fed.Reg. 50746, 50776 (August 21, 2000) (codified in 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (2001)) (emphasis added).

The new rules revising the regulations for evaluating mental impairments were effective September 20, 2000, after the ALJ issued his decision in this matter on December 23, 1998. In his brief, the Commissioner assumes that the new regulations apply retroactively. Pope v. Shalala, 998 F.2d 473 (7th Cir. 1993) (reversed on other grounds), provides guidance concerning when an interpretation of a rule or statute is applied retroactively. A rule changing the law is retroactively applied to events prior to its promulgation only if Congress expressly authorized retroactive rulemaking and the agency clearly intended that the rule have retroactive effect. Id. at 483.

Retroactivity is not an issue if a rule simply clarifies an unsettled or confusing area of the law and does not change the law. Id. "In determining whether a rule is a clarification or a change in the law, the intent and interpretation of the promulgating agency as to the effect of the rule is certainly given great weight." Id.

The Commissioner has previously taken the position that the Social Security Agency has for many years applied a three-part standard under 12.05(C) which requires a threshold showing that the claimant is mentally retarded. Cooper v. Massanari, 2001 WL 1464930, * 6 (N.D. Ill. Nov. 15, 2001). In a 1998 acquiescence ruling, the Commissioner outlined a three-part test to be used in determining whether a claimant meets Listing 12.05(C). S.S.R. 98-2(8). Moreover, in the revised regulations published in the Federal Register, the Social Security Administration explains that it merely "added a description of the structure of listing 12.05, 'Mental retardation,' because it is the only other listing that does not employ the same paragraph A-paragraph B system as the other mental disorders listings in all of its sections." 65 Fed.Reg. 50746, 50749 (August 21, 2000). The new regulations did not change the structure or substance of Listing 12.05. The new regulation concerning Listing 12.05 which makes clear that the claimant must initially show that he is mentally retarded before proceeding to the requirements of Listing 12.05(C) appears to be consistent with the Commissioner's prior position. The Court concludes that no retroactivity issue exists.

The ALJ's determination that Elster does not meet Listing 12.05(C) is not supported by substantial evidence because the ALJ did not make a finding regarding whether Elster evidenced "significantly subaverage general intellectual functioning" as required by Listing 12.05(C). Accordingly, the Court remands this case to the Commissioner to make specific findings at step three

concerning whether Elster exhibits significantly subaverage general intellectual functioning.[2]

Elster also asserts that the ALJ erred at step five by using the grid without obtaining testimony from a vocational expert. In appropriate cases, the ALJ may rely on the grid in determining disability. "The grid is a chart which classifies a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience." Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). If use of the grid is appropriate, the grid alone constitutes substantive evidence sufficient to support the decision of the Commissioner. Id. However, "use of the grid may be inappropriate if the claimant suffers from severe non-exertional impairments, including pain, which prevent the claimant from performing the work indicated by the grid." Id. at 640-41. When a claimant suffers from a non-exertional limitation which might substantially reduce the range of work which he can perform, the ALJ must consult a vocational expert. Luna v. Shalala, 22 F.3d 687, 691 (7th Cir. 1994). An ALJ's use of the grids may be upheld were there is some reliable evidence that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. Walker, 834 F.2d at 641.

In this case, the ALJ determined that Elster's additional limitations were only slight and did not significantly erode the relevant occupational base for jobs. R. 19. Applicable Social Security rulings and regulations confirm that the ALJ did not err in failing to utilize a vocational expert. The ALJ's residual functional capacity finding restricted Elster from working in settings containing any respiratory irritant at concentrated levels; working in relative extremes of heat or cold; and

---

[2] The ALJ's failure to attach his completed Psychiatric Review Technique Form to his written decision does not require a remand. Godbey v. Apfel, 238 F.3d 803, 810 (7th Cir. 2000).

understanding, remembering, and/or carrying out detailed and complex work tasks. R. 16.[3] Based on an exertional capacity for medium work, and the claimant's age, educational background, and work experience, a framework application of Grid Rule 203.28 directs a conclusion of "not disabled."

Social Security Ruling (SSR) 83-14 confirms that environmental restrictions, such as the need to avoid working in settings containing any respiratory irritant at concentrated levels and in relative extremes of heat or cold does not significantly affect the potential medium occupational base. SSR 83-14 states that "[t]he need to avoid environments which contain objects or substances commonly known not to exist in most workplaces would be an obvious example of a restriction which does not significantly affect the medium occupational base." SSR 85-15 provides: "Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." Furthermore, a person who is capable of performing medium work, can also perform light work. 20 C.F.R. § 404.1567(c). SSR 83-14 states that environmental restrictions, such as the need to avoid exposure to feathers, would not significantly affect the potential unskilled light occupational base. Grid Rule 202.20, which would apply to an individual with Elster's vocational characteristics and an RFC for light work, directs a finding of "not disabled."

---

[3] Elster argues that the ALJ should have consulted a vocational expert regarding how his alleged non-exertional impairments of a limited functional ability in the areas of work skills, self-direction and communication affected the relevant occupational base. The ALJ did not include the non-exertional impairments of a limited functional ability in the areas of work skills, self-direction and communication in his residual functional capacity (RFC) finding. Elster does not challenge the ALJ's RFC assessment. Thus, the ALJ was not required to consult a vocational expert regarding these alleged non-exertional symptoms. R. 16.

Moreover, the ALJ's restriction of Elster to jobs not involving understanding, remembering, or carrying out detailed and complex work tasks was consistent with the use of Grid Rule 203.28 as a framework for decisionmaking. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). The RFC restriction against detailed and complex work tasks is accommodated by Grid Rule 203.28, which specifies performance of unskilled work. Consistent with the Commissioner's rulings and regulations, the ALJ reasonably concluded that Elster's nonexertional restrictions did not significantly erode the occupational base of medium work. The ALJ's decision to use the grid as a framework for decisionmaking without the assistance of a vocational expert is supported by substantial evidence.

## IV. CONCLUSION

For the reasons stated, this Court grants Elster's motion in part and denies it in part and grants the Commissioner's motion in part and denies it in part. This case is remanded pursuant to Sentence 4 of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. The Clerk is directed to enter judgment pursuant to Fed.R.Civ.P. 58 in favor of plaintiff and against defendant. This case is terminated.

**ENTER:**

Nan R. Nolan
**United States Magistrate Judge**

Dated: Jan 9, 2003